Ricky LISTON, Appellant,

v.

STATE of Alaska, Appellee.

No. 5898.

Court of Appeals of Alaska.

Feb. 18, 1983.

concealing evidence, former AS 11.30.315. Liston appeals contending: (1) that the trial court erred in failing to suppress evidence of his palm print which was obtained without a warrant, Alaska Rule of Criminal Procedure 16(c), and (2) that the trial court erred by permitting Liston's trial counsel to withdraw a motion for mistrial after it had been granted.

## I. ALASKA RULE OF CRIMINAL PROCEDURE 16(c)

On November 26, 1979, Liston was arrested for assault on an airport police officer. The assault occurred while the officer was investigating charges that Liston was transporting contraband. Liston was taken to the airport security office and certain property was taken from his person and locked in a desk drawer: $500 in cash, an airplane ticket to Kodiak, and two plastic packets of white powder. Liston was booked and released when his mother posted bail. The next morning an airport security officer discovered that the security office desk had been broken into and that the plastic packets and money were stolen. The officer observed palm prints on the conduit pipes above the ceiling to the office in the area in which they believed the intruder had made his entry. The police had no known palm prints of Liston for comparison.

On December 6, Liston appeared for arraignment on his assault and battery charge and the prosecutor successfully moved to have Liston's bail increased arguing that Liston was a suspect in the burglary of the airport security office. He had not been charged with this offense at that time and no court order permitting the police to obtain Liston's palm print had been obtained in either the burglary or the assault proceeding. Nevertheless, the trooper investigating the burglary ordered the corrections officials holding Liston to obtain a palm print which was done. Liston's palm print matched the print found in the airport security office. Liston moved to suppress this evidence reasoning that it

Susan Orlansky, Asst. Public Defender, and Dana Fabe, Public Defender, Anchorage, for appellant.

W.H. Hawley, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Wilson L. Condon, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

SINGLETON, Judge.

Ricky Liston was convicted of burglary not in a dwelling, former AS 11.20.100, and

had been obtained in violation of Alaska Rule of Criminal Procedure 16(c). The trial court denied that motion and Liston appeals. Alaska Rule of Criminal Procedure 16(c) provides in relevant part:

(c) *Disclosure to the Prosecuting Attorney.*

(1) *Non-Testimonial Identification Procedures—Authority.* Upon application of the prosecuting attorney, the court by order may direct any person to participate in one or more of the procedures specified in subsection (c)(2) of this rule if affidavit or testimony shows probable cause to believe that:

(i) An offense has been committed by one of several persons comprising a narrow focal group that includes the subject person;

(ii) The evidence sought may be of material aid in identifying who committed the offense; and

(iii) The evidence sought cannot practicably be obtained from other sources.

(2) *Non-Testimonial Identification Procedures—Scope.* An order issued under subsection (c)(1) of this rule may direct the person to do or submit to any and all of the following:

(i) Appear in a line-up;

(ii) Speak words, phrases or sentences relevant to the case for identification by witnesses;

(iii) Be fingerprinted;

(iv) Pose for photographs not involving reenactment of a scene;

(v) Try on articles of clothing;

(vi) Permit the taking of specimens of material under his fingernails;

(vii) Permit the taking of samples of blood, hair and other materials of his body which involved no unreasonable intrusion thereof;

(viii) Provide specimens of his handwriting;

(ix) Submit to a reasonable physical or medical inspection of his body.

(3) *Right to Counsel.* When issuing an order under subsection (c)(1) of this rule, the court shall also order that the person be represented by counsel or waive his right to be represented by counsel before being required to appear in a lineup, give a specimen of handwriting, or speak for identification by witnesses of an offense.

The federal constitution does not prevent the police from obtaining evidence such as palm prints from someone lawfully in their custody without a warrant. *United States v. Euge,* 444 U.S. 707, 100 S.Ct. 874, 63 L.Ed.2d 141 (1980); *United States v. Dionisio,* 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973); *United States v. Mara,* 410 U.S. 19, 93 S.Ct. 774, 35 L.Ed.2d 99 (1973); *In re Grand Jury Proceedings,* 507 F.2d 963 (3d Cir.), *cert. denied,* 421 U.S. 1015, 95 S.Ct. 2424, 44 L.Ed.2d 685 (1975). *See* 1 W. La-Fave, *Search and Seizure* § 2.6(a) (1978). Liston does not argue that our state constitution precludes the police from obtaining palm prints without a warrant. *See Zehrung v. State,* 569 P.2d 189, 193 n. 12 (Alaska 1977), *modified,* reh'g. 573 P.2d 858, 859 (Alaska 1978) (reserving the issue). The sole question, therefore, is whether Alaska Criminal Rule 16(c) was intended to apply to those in custody. We conclude that it was not. The Alaska Criminal Rules are largely derived from the Federal Rules of Criminal Procedure. In some cases, however, the Alaska Supreme Court looked elsewhere for models. Alaska Rule of Criminal Procedure 16(c) is based on the ABA Standards Relating to Discovery and Procedure Before Trial § 3.1 (Approved Draft 1970). The commentary to that section makes it clear that the section was intended to enable the prosecution to obtain evidence, *e.g.,* fingerprints, from those not in custody. It was not intended to address the rights of those in custody.[1] The commentary provides in part:

---

1. Those in custody are entitled to state and federal constitutional protections against illegal searches and seizures. Our holding that no court order is necessary to obtain a palm print

The central point of the standard is that such prosecution investigation [*e.g.*, obtaining fingerprints] as may be permissible prior to formal charging or when the accused is in custody should also be available to the prosecution once charges have been lodged and the accused is at liberty. *Id.* at 96.

■ We·conclude that the rule is intended to address problems created by *Davis v. Mississippi*, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969). *Davis* has been interpreted to hold that identification evidence, such as fingerprints, may not be obtained from those who are not legally in custody under circumstances in which such evidence could have been obtained from those in legal custody. *United States v. Anderson*, 490 F.2d 785, 788 (D.C.Cir.1974). The ABA standard thus serves the same purpose as the Model Code of Pre-Arraignment Procedure § 170 (1975). *See* especially commentary at 459–89 (where the suspect is in custody, the code does not contemplate a need for a court order). *See also id.* § 160.2(6) & (7)(a); Note, *Fourth Amendment Implications of Compelling an Individual to Appear in a Lineup Without Probable Cause to Arrest*, 45 Fordham L.Rev. 124, 126 (1976). We are satisfied that the discovery rule was not intended by the supreme court to address the rights of those in custody. We recognize that the court could extend the discovery rule, as part of its rule making power, to cover those in custody but we do not believe that we should do so by decision. We are influenced by the following factors: (1) case authority precludes the need for court orders to obtain nontestimonial identification evidence from those in custody, (2) the current ABA

Standards dispense with court orders even where the subject is not in custody (II ABA Standards for Criminal Justice Standard 11–3.1 (2d. ed. 1980); *but cf. People v. Moselle*, 57 N.Y.2d 97, 454 N.Y.S.2d 292, 439 N.E.2d 1235 (N.Y.1982) (court finds similar discovery rule applicable to those who have been charged and those who have not and by implication would extend to those in custody); (3) court orders, if required, will be issued almost as a matter of course; and (4) the inconvenience to the subject from giving a palm print will in most cases be minor.

■ Since the rule does not apply to defendants in custody, it is not necessary to determine whether the palm print was obtained solely by exploiting a violation of the rule. *Cf. United States v. DeSimone, III*, 660 F.2d 532, 542–43 (5th Cir.1981); *accord United States v. Rowell*, 612 F.2d 1176, 1179–80 (7th Cir.1980) (alternate holding); *United States v. Jarvis*, 560 F.2d 494, 498–99 (2d Cir.1977), *cert. denied*, 435 U.S. 934, 98 S.Ct. 1511, 55 L.Ed.2d 532 (1978) (each of these cases hold that fingerprints illegally seized from one whom the police had probable cause to suspect of a crime admissible despite the illegal seizure under a theory akin to inevitable discovery); and *Harker v. State*, 637 P.2d 716, 719–20 (Alaska App.1981) (prohibition against illegally obtained evidence in Evidence Rule 412 applies only to evidence obtained in violation of the objecting parties' constitutional rights).

## II. LISTON'S MOTION FOR MISTRIAL

■ During the course of the examination of a prosecution witness, the witness

from one in custody recognizes the distinction drawn in *Cupp v. Murphy*, 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973), between obtaining evidence in a manner that involves an invasion of the suspect's body which the court concludes constitutes a "search," governed by the fourth amendment, and obtaining identification evidence, that does not invade the suspect's body or otherwise subject him to pain or embarrassment, which would not be a

"search." Under *Cupp*, the police could not obtain blood samples or fingernail scrapings without complying with the fourth amendment whether or not a specific discovery rule applies to those in custody. It is clear, however, that obtaining identification evidence such as a fingerprint, and by extension a plam print, does not constitute a "search." *See United States v. Dionisio*, 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973).

commented on Liston's remaining silent when questioned about the burglary. Liston immediately moved for a mistrial and argued that the comment was so clearly inappropriate that retrial should be barred. The trial court granted the mistrial, holding that he was not convinced beyond a reasonable doubt that the comment might not affect the outcome. The trial court ruled, however, that the comment was an accident and therefore a retrial was not barred. Faced with a new trial, Liston's counsel reevaluated his position and recommended to Liston that he waive the error and proceed with the trial before the jury they had. Counsel represented to the court that Liston personally agreed to proceeding and the trial resumed. Liston now argues that the trial court was under an obligation to procure a verbal waiver from Liston personally and, in default thereof, the conviction must be set aside. Liston relies on cases like *Walker v. State,* 578 P.2d 1388 (Alaska 1978), where the supreme court held that a judge must personally address the defendant before accepting waiver of a full jury of twelve persons. We disagree. The decision to move for a mistrial and the decision to withdraw such a motion, if granted, are matters of trial strategy which defense counsel may determine without the express agreement of his client. *Matter of C.L.T.,* 597 P.2d 518, 522–23 (Alaska 1979); *Lanier v. State,* 486 P.2d 981 (Alaska 1971). In any event, we are satisfied that the record compels a finding that Liston joined in his counsel's decision to withdraw the motion. *See State v. Nixon,* 223 Kan. 788, 576 P.2d 691 (Kan.1978). The record reflects that counsel obtained a recess so that he could consult with Mr. Liston about the retrial and counsel's conclusion that they should stay with the same jury. An instruction was given directing the jury to disregard the comment. Under these circumstances, we find no reversible error.

 Liston argues that his counsel was concerned about starting the case again the following day in the event the first jury

was discharged and the mistrial granted. He claims that defense counsel allowed concerns about counsel's own calendar to influence his decision to waive the mistrial. Liston contends that counsel's concerns created a conflict of interest which deprived Liston of the effective assistance of counsel. *Risher v. State,* 523 P.2d 421 (Alaska 1974). Liston did not request an evidentiary hearing in the trial court on this issue. Looking only at the record made at trial, we are unable to say that Liston has sustained his burden of proving that trial counsel gave him less than the average representation customary in criminal cases in this community. It is clear that Liston, in moving for mistrial, hoped that the trial court would find that retrial was barred. When this hope was not realized, Liston was faced with choosing between a new jury and the present one. Liston's right to complete the trial with the present jury and his right to a speedy trial conflicted with terminating the trial and beginning with a new jury. Liston was faced with a tactical choice. We cannot say that his decision to proceed with the existing jury, whether or not influenced by counsel, deprived him of the assistance of competent counsel.

The judgment of the superior court is AFFIRMED.